UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SLADE SMITH**,<br><br>               Plaintiff,<br><br>      v.<br><br>**DISTRICT OF COLUMBIA**,<br><br>               Defendant. | Case No. 23-cv-1837 (CRC) |

## OPINION AND ORDER

Slade Smith is a climate control mechanic at Saint Elizabeths Hospital ("St. Elizabeths") in Washington, D.C. He filed this pro se lawsuit against St. Elizabeths after he was passed over for a promotion. Generously construed, his original complaint and related filings attempted to assert claims under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §§ 1983, 1985, and 1986, as well as common-law claims for negligence and "honest services fraud." St. Elizabeths moved to dismiss, contending that it could not be sued in its own name and that substituting the District of Columbia as defendant would be futile because Smith's complaint did not satisfy Federal Rules of Civil Procedure 8 or 9 or set forth viable claims. The Court granted St. Elizabeth's motion but allowed Smith to substitute the District as defendant and file an amended complaint as to his Title VII, § 1983, and negligence claims. Now before the Court is the District's motion to dismiss Smith's amended complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Even after a second bite at the apple, Smith still has not pled a viable federal claim for relief, and the Court declines to exercise supplemental jurisdiction over Smith's D.C.-law negligence claim. Accordingly, the Court will grant the District's motion.

I. **Background**

   A. Factual Background

St. Elizabeths hired Mr. Smith as a climate control mechanic in 2022. ECF 21 (Am. Compl.) at 2. According to Smith, many of St. Elizabeth's employees and patients contracted COVID-19 that year. See id. Smith also noticed the hospital was often too hot, with its temperature rising to between 76 and 80 degrees. Id. at 3. Smith recorded these temperature fluctuations and attempted to regulate the temperature himself. See id. He claims these efforts angered the hospital administration, which "confined" him to the boiler room floor where he was made to "sweep the floors." ECF 25 (Opp'n) at 2.

Around the same time, Smith allegedly discovered that St. Elizabeths was not properly maintaining its air filters and ventilation system. Compl. at 4. He claims he contracted COVID-19 in 2022 due to "DC government gross negligence." Id.

His concerns about the hospital's maintenance twice led him to apply for supervisory roles. See id. at 4–5. The first time, he did not receive an interview. Id. at 4. The second time, he was passed over for the promotion in favor of an outside candidate, who, according to Smith, was chosen because he was a friend of the supervisor. See id. at 5.

   B. Procedural Background

After the hospital declined to promote him, Smith filed this pro se lawsuit, asserting Title VII discrimination and 42 U.S.C. §§ 1983, 1985, and 1986 claims, as well as common-law claims for negligence and "honest services fraud." See ECF 1 (Compl.) at 1–4; ECF 20 (Op. & Order) at 1. St. Elizabeths moved to dismiss Smith's complaint because St. Elizabeths cannot be sued in its own name. See ECF 10 (First Mot.) at 5. And it argued that substituting the District as defendant would be futile, as Smith's complaint did not satisfy Federal Rules of Civil

Procedure 8 or 9 or set forth viable claims. See id. The Court agreed that St. Elizabeths was not the proper defendant and that, as pled, the complaint failed to state a claim for relief. Op & Order at 2. But it granted Smith leave to amend his Title VII, § 1983, and negligence claims because Smith's filings suggested "those claims could potentially be shored up in an amended complaint." Id. Smith then filed an amended complaint, seeking $1 million in compensatory damages, $1 million in punitive damages, and a declaratory judgment ordering the District to change its hiring practices. Am. Compl. at 5. The District moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), contending that Smith had abandoned all claims except for his Title VII claim, and that he had failed to allege essential elements under Title VII. See ECF 23 (Second Mot.) at 2–3. Smith subsequently filed a motion for a status update. See ECF 32.

## II. Legal Standards

### A. Motion to Dismiss

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible if the pleaded facts allow the court to reasonably infer that the defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678. While a court must take the complaint's factual allegations as true, it need not accept legal conclusions, and mere "labels" or "[t]hreadbare recitals of the elements of a cause of action . . . do not suffice." Id. (quoting Twombly, 550 U.S. at 555).

### B. Pro Se Plaintiffs

"[T]he pleadings of pro se parties are to be 'liberally construed' and 'held to less stringent standards than formal pleadings drafted by lawyers[.]'" Tyson v. Brennan, 277 F.

3

Supp. 3d 28, 35 (D.D.C. 2017) (second alteration in original) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam)).  A pro se litigant's complaint is assessed "in light of all filings, including filings responsive to a motion to dismiss," such as the opposition to the motion.  Ho v. Garland, 106 F.4th 47, 50 (D.C. Cir. 2024) (quotation marks omitted) (quoting Brown v. Whole Foods Mkt. Grp., Inc., 789 F.3d 146, 152 (D.C. Cir. 2015) (per curiam)).

    C.  Supplemental Jurisdiction

"Federal courts are courts of limited jurisdiction."  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).  They exercise original jurisdiction primarily through federal question and diversity jurisdiction, but they also have supplemental jurisdiction over state-law claims—here, D.C.-law claims—related to claims within their original jurisdiction.  See 28 U.S.C. §§ 1331–1332; United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966).  Specifically, under 28 U.S.C. § 1367(a), district courts may hear such related claims if they "form part of the same case or controversy under Article III" as the claim over which they have original jurisdiction.  However, courts may decline supplemental jurisdiction if, for example, "the district court has dismissed all claims over which it has original jurisdiction," or "the claim raises a novel or complex issue of State law."  28 U.S.C. § 1367(c).  "[I]n the usual case in which all federal-law claims are dismissed before trial," considerations of "judicial economy, convenience, fairness, and comity . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."  Shekoyan v. Sibley Int'l, 409 F.3d 414, 424 (D.C. Cir. 2005) (first alteration in original) (citation omitted).

**III. Analysis**

The Court will dismiss Smith's amended complaint because it fails to plead a viable federal claim for relief, and the Court will decline to exercise supplemental jurisdiction over Smith's D.C.-law negligence claim.

A. Title VII

The Court allowed Smith to amend his Title VII discrimination claim based on allegations that he was bypassed for a supervisory position "due to racial bias" and that the selected candidate was "a less qualified individual." Op. & Order at 8 (quoting ECF 16 at 1). Now, Smith appears to challenge under Title VII his nonselection for supervisory positions, the purported existence of a hostile work environment, and alleged retaliation. See Opp'n at 2, 4–6. The Court will dismiss these claims.

1. *Disparate Treatment*

Smith first attempts to plead a disparate-treatment claim based on the District's failure to promote him to supervisory positions.

To make out a prima facie case of disparate treatment under Title VII, a plaintiff must allege that he (1) belongs to a protected class and (2) suffered an adverse employment action giving rise to an inference of discrimination. See Stella v. Mineta, 284 F.3d 135, 145 (D.C. Cir. 2002). Absent direct evidence of discrimination, a plaintiff may state a claim by showing that he was treated differently from similarly situated employees outside his protected class. Brown v. Sessoms, 774 F.3d 1016, 1022 (D.C. Cir. 2014).

Smith has pled that he belongs to a protected class: His opposition states that he is African American. See Opp'n at 5. And he allegedly suffered an adverse employment action because he was not selected for two supervisory positions. See Am. Compl. at 4–5. But Smith

5

has not offered any facts capable of supporting an inference that his nonselection was discriminatory.

Smith has not, for example, alleged a similarly situated comparator. He does not identify the race of the individuals who were hired for the supervisory positions instead of him. And his filings do not otherwise give rise to a plausible inference of discrimination. He asserts only that "[r]acial discrimination was a factor" in "why I wasn't hired," and "you could tell that African American[s] wouldn't get far informing the administration that they were in violation of EPA mandates." Opp'n at 2. But mere "labels and conclusions" are insufficient to state a plausible disparate-treatment claim. Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). Indeed, Smith's filings offer *other* explanations for why he was passed over for the jobs—including a supervisor's preference for hiring a friend, see Am. Compl. at 5—but *no* facts connecting his nonselection to his race. Accordingly, the Court will grant the District's motion to dismiss Smith's Title VII disparate-treatment claim.

    2. *Hostile Work Environment*

Smith's Title VII hostile-work-environment claim is similarly lacking.

To state a hostile-work-environment claim, a plaintiff must allege that his workplace was "permeated with discriminatory intimidation, ridicule, and insult" that was "sufficiently severe or pervasive to alter the conditions of . . . [his] employment and create an abusive working environment[.]" Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (quotation marks omitted) (citation omitted). Courts evaluate such claims under the "totality of the circumstances," considering the frequency, severity, offensiveness, and impact of the conduct on the plaintiff's performance. Baloch v. Kempthorne, 550 F.3d 1191, 1201 (D.C. Cir. 2008). The behavior must be extreme enough to alter employment conditions so that Title VII does not become a mere

"general civility code." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998)). And "some linkage [must exist] between the hostile behavior and the plaintiff's membership in a protected class." Na'im v. Clinton, 626 F. Supp. 2d 63, 73 (D.D.C. 2009).

Smith alleges that he was subjected to a hostile work environment because he was "confined . . . to the boiler room" after he confronted his boss with his findings about temperature and equipment issues at the hospital. Opp'n at 4. This allegation cannot support a hostile-work-environment claim. Smith offers scant details about his "confine[ment] . . . to the boiler room." Id. And, standing alone, it is an isolated event that does not rise to the level of "severe or pervasive" harassment necessary for a hostile work environment. Moreover, Smith does not connect this or any other alleged harassment to his race. Accordingly, the Court will dismiss this claim.

### 3. Retaliation

The Court will also dismiss Smith's retaliation claim.

To state a retaliation claim, a plaintiff must allege that (1) he opposed a practice made unlawful under Title VII; (2) his employer took a materially adverse action against him; and (3) the action was taken "because" of the opposition. McGrath v. Clinton, 666 F.3d 1377, 1380 (D.C. Cir. 2012).

Smith's retaliation claims fails at the threshold: He has not pled that he opposed a practice made unlawful under Title VII. Smith claims the hospital administration was "mad" and "confined" him "to the boiler room" because he recorded and tried to fix the issues he observed with the hospital's temperature and equipment. See Opp'n at 2, 4. He also suggests he was not promoted (and even feared being "demoted or fired") because of his efforts to deal with

7

the hospital's temperature and because he informed human resources that D.C. allegedly gives public-sector employees preference over civilians for certain roles. Id. at 2 ("[Y]ou could tell that African American[s] wouldn't get far informing the administration that they were in violation of EPA mandates."); see also id. at 5 (arguing that he was "denied the position because he asserted the policies" of the D.C. government to give D.C. employees the "right to apply for the position before the D[.]C. Government outsource[s] a contract or fill[s] a position with a civilian").

But recording, reporting, and attempting to lower the temperature inside a hospital is not protected activity within the meaning of Title VII, which prohibits discrimination in the workplace based on protected characteristics. Nor is asserting an alleged D.C. hiring policy that is unconnected to antidiscrimination efforts. Therefore, because Smith has not pled he engaged in protected activity, he has failed to make out a Title VII retaliation claim.

B. § 1983

The Court will also dismiss Smith's § 1983 claim, which he has effectively abandoned. In the Court's prior opinion, it specifically instructed that "[t]o state a claim under § 1983 against the District of Columbia, Smith's complaint" would need to "state 'a claim for a predicate constitutional violation' and 'a claim that a policy or custom of the District of Columbia caused the constitutional violation' as its 'moving force.'" Op & Order at 9 (quoting Baker v. District of Columbia, 326 F.3d 1302, 1306 (D.C. Cir. 2003)). But Smith has stated no such claim. While his amended complaint cites § 1983, it does not reference any constitutional provision. To the extent his allegation that "[r]acial discrimination was a factor" in his nonselection could be considered an attempt to plead a constitutional violation, it is conclusory and fails for the same reasons that his Title VII claims do.

C. Negligence

Finally, Smith asserts that he contracted COVID-19 due to the District's "gross negligence" in maintaining the hospital facility, which led to inadequate ventilation. Am. Compl. at 4; see also Opp'n at 1 ("[T]he plaintiff caught Covid-19 as well due to lack of Fresh Air coming through the ventilation system because the intake air actuators weren't working and the coils was [sic] stopped up from years of dirt and other problems."). The District does not respond to this claim, arguing that Smith's amended complaint "focuse[s] exclusively on a claim under Title VII of the Civil Rights Act." Second Mot. at 1. But the Court deems Smith's reference to "negligence" and his proffered theory for why the hospital's maintenance led him to contract COVID-19 sufficient to raise a potential negligence claim.

The Court, however, will decline to exercise supplemental jurisdiction over this claim. The Court had original jurisdiction over Smith's Title VII and § 1983 claims, which, for the reasons explained above, must be dismissed. And, once the federal claims over which a court had original jurisdiction are dismissed, the "common practice of the judges in this district [is] to decline to exercise supplemental jurisdiction over local matters"—such as Smith's common-law negligence claim. Miller v. D.C. Water & Sewer Auth., No. 17-cv-840 (KBJ), 2018 WL 4762261, at *15 (D.D.C. Oct. 2, 2018) (collecting cases). The Court will adhere to this practice, particularly because Smith's negligence claim may implicate "a novel or complex issue of State law" under 28 U.S.C. § 1367(c): namely, whether D.C.'s worker's compensation scheme for public-sector employees bars an employee's negligence suit against his employer based on allegedly having contracted COVID-19 at work. Under D.C. law, a public employee's work-related injuries or illnesses are governed by the Compensation Merit Personnel Act, "which, among other things, creates a workers' compensation scheme that is generally the exclusive

remedy against the District for District employees injured in the course and scope of their employment." Colbert v. District of Columbia, 304 A.3d 199, 201 (D.C. 2023) (citing D.C. Code § 1-623.16(c)); see also Manyan v. District of Columbia, No. 23-cv-3192 (TJK), 2025 WL 315140, at *10 (D.D.C. Jan. 28, 2025). The statute defines "injury" to include an "[o]ccupational disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury." D.C. Code § 1-623.01(5)(A)(ii). The Court is not aware of any D.C. cases resolving whether an employee whose COVID-19 is deemed to have "arise[n] . . . out of" his employment can sue the employer in tort or must instead file a workers' compensation claim, and the District has not briefed this issue. Given the unsettled state of District law, lack of briefing, and no remaining claims within this Court's original jurisdiction, the Court will decline to exercise supplemental jurisdiction over Smith's negligence claim and dismiss it. See Shekoyan, 409 F.3d at 423 ("Whether to retain jurisdiction over pendent state and common law claims after the dismissal of the federal claims is 'a matter left to the sound discretion of the district court' that" the Court of Appeals "review[s] for abuse of discretion only.") (quoting Edmondson & Gallagher v. Alban Towers Tenants Ass'n, 48 F.3d 1260, 1265–66 (D.C. Cir. 1995))). "[Smith] may bring such claim[], if not barred, in the appropriate local court." Artis v. District of Columbia, 51 F. Supp. 3d 135, 142 (D.D.C. 2014).

## IV. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that Defendant's [ECF 23] Motion to Dismiss is GRANTED. It is further

**ORDERED** Plaintiff's [ECF 32] Motion for a Status Update is DENIED as MOOT.

**SO ORDERED**.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:  <u>April 11, 2025</u>